# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11 C 2128 |
| DAVID J. DUBIN, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff PNC Bank, National Association's (PNC) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

In July of 2006, PNC and 3600 South Western Project Limited Partnership (Borrower) entered into a Construction Loan Agreement (Loan Agreement). PNC contends that in connection with the Loan Agreement, Defendant David J. Dubin (Dubin) and Defendant Stuart Kantoff (Kantoff) executed a Guaranty (Dubin/Kantoff Guaranty). Under the terms of the Dubin/Kantoff Guaranty, Dubin's liability is allegedly "limited to 80% of the Secured Obligations and 80% of the

Enforcement Costs," and Kantoff's liability is allegedly "limited to 20% of the Secured Obligations and 20% of the Enforcement Costs." (SA Compl. Par. 18). In addition, PNC contends that Defendant 3600 South Western LLC (LLC) also executed a Guaranty (LLC Guaranty) in connection with the Loan Agreement, under which LLC agreed to "the full and prompt payment . . . and performance of all Secured Obligations." (SA Compl. Par. 20). Under the terms of the Dubin/Kantoff Guaranty and the LCC Guaranty (collectively referred to as "Guaranties"), Dubin, Kantoff, and LLC (collectively referred to as "Guarantors") each allegedly became principal obligors, as opposed to sureties, on the loan extended pursuant to the Loan Agreement.

PNC contends that in May of 2008, the Loan Agreement was modified and an amended promissory note in the principal amount of $6,925,181.81 (Note) was signed by the Borrower. In May of 2009, the Loan Agreement was allegedly modified a second time to extend the maturity date of the loan to November 1, 2010. According to PNC, Guarantors reaffirmed their obligations under the Guaranties as to the Note. PNC contends that Borrower defaulted on the Note by failing to pay the outstanding principal of the Note on November 1, 2010. PNC allegedly demanded payment of the amounts due under the Note from Borrower, and Borrower allegedly failed to make any payment. PNC also allegedly demanded payment of the amounts due under the Guaranties from Guarantors, and Guarantors also allegedly failed to pay the amounts due. On March 28, 2011, PNC brought the instant breach of contract action against Guarantors. On July 30, 2012, Kantoff was dismissed from

the instant action pursuant to settlement.  PNC now moves for summary judgment on the claims brought against Dubin and LLC.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope School,* 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the nonmoving party.  *Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Dubin and LLC (collectively referred to as "Remaining Defendants") argue that summary judgment is not appropriate in this case because there is a genuine

issue of material fact as to damages.

## I.  Compliance with Local Rule 56.1

Remaining Defendants indicate in response to some of PNC's statement of material facts that they do not have sufficient information to admit or deny certain facts.  (R SF Par. 1, 2, 4, 53).  Remaining Defendants also deny certain other facts without citing to the record in support of any of their denials.  (R SF Par. 9, 48-52).  Since Remaining Defendants have failed to comply with Local Rule 56.1 in responding to PNC's statement of material facts, all of the facts contained in  PNC's statement of material facts are deemed undisputed.  *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008)(stating that "[d]istrict courts are entitled to expect strict compliance with Rule 56.1")(internal quotations omitted)(quoting *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004)); LR 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(explaining that a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence).

## II.  LLC's Liability Under the LLC Guaranty

In their opposition to PNC's motion for summary judgement, Remaining Defendants have not made any arguments regarding LLC's liability under the LLC Guaranty.  It is undisputed that, under the terms of the LLC Guaranty, LLC

"absolutely, unconditionally and irrevocably guarantee[d], as a principal obligor and not as a surety, . . . full and prompt payment from Guarantor's Funds and performance of all Secured Obligations."  (SF Par. 26).  It is also undisputed that LLC is liable for the full amount of Enforcement Costs.  (SF Par. 33).   In addition, the undisputed record shows that "a principle balance of $6,925,181.81 is currently due and owing" on the loan.  (SF Par. 49).  It is also undisputed that "as of March 18, 2011, interest amounting to more than $700,000.00 is also due and owing," and that "more than $306,081.59 is currently due and owing in late charges."  (SF Par. 50, 51).  It is further undisputed that Borrower owes an additional $69,251.00 on the loan, representing an Exit Fee, and that "interest continues to accrue on a daily basis and additional amounts are owed for legal fees."  (SF Par. 52, 53).

Prior to ruling on the pending motion, the court asked PNC to provide information relating to Enforcement Costs and to indicate to the court exactly how much interest was due and owing as of August 22, 2012, and how it is calculated on a daily basis.  PNC has indicated to the court that it does not wish to pursue Enforcement Costs, that the outstanding interest as of August 22, 2012 is $1,250,124.11, and that interest continues to accrue at a rate of $1,154.20 per day. Remaining Defendants have not challenged PNC's representation regarding the accrued interest.  Therefore, based upon the undisputed facts, summary judgment is granted in favor of PNC and against LLC, and judgment is entered against LLC in the amount of $8,572,568.31, which represents $6,925,181.81 in principle, $1,272,053.91 in interest, $306,081.59 in late charges, and $69,251.00 for the Exit

Fee.

### III.  Dubin's Liability Under the Dubin/Kantoff Guaranty

Remaining Defendants argue that Dubin is entitled to certain set-offs paid to reduce the outstanding amounts due under the loan, and that Dubin's liability under the terms of the Dubin/Kantoff Guaranty is limited to 80% of the outstanding amounts due under the Loan Agreement.

#### A.  Right to Set-Offs

Remaining Defendants contend that Dubin is entitled to a set-off in the amount Kantoff paid to settle the claim brought against him, as well as a prospective set-off of any amount recovered by PNC in connection with a pending mortgage foreclosure action filed by PNC, which seeks foreclosure on real property used to secure the loan at issue in this case (Foreclosure Action).  However, the undisputed record shows that, under the terms of the Guaranty, no set-off would be provided for "payments from any source other than such Guarantor's Funds, and expressly excluding any payment made from Excluded Funds."  (SF Ex. 1, A § 2(b)).  Remaining Defendants concede that, under this provision, "the 80% of the outstanding amount of Dubin's guaranty amount cannot be reduced by any payment from Kantoff."  (Resp. 3).  In addition, the record indicates that the definition of "Excluded Funds" includes "proceeds from the sale or transfer of any of the assets of Borrower, including proceeds from any foreclosure proceedings."  (SF Ex. 1, A § 1(d)).  Thus, under the

express terms of the Guaranty, Dubin is not entitled to any set-off for the amount paid by Kantoff to settle the claim brought against him, or any set-off relating to the Foreclosure Action.

Remaining Defendants contend that it would be a violation of public policy to calculate Dubin's liability without reducing the principle amount due under the Loan Agreement by any settlement amount paid by Kantoff. However, as PNC points out, if such a set-off were allowed, a certain portion of the "Secured Obligations" would be unrecoverable under the Dubin/Kantoff Guaranty. (Reply 4). The record is clear that, together, Kantoff and Dubin "absolutely, unconditionally and irrevocably guarantee[d], [each] as a principal obligor and not as a surety, . . . full and prompt payment from Guarantor's Funds and performance of all Secured Obligations." (SF Par. 14). Kantoff's payment of 20% of the Secured Obligations, or some portion thereof based on a settlement agreement, does not reduce Dubin's obligation to pay 80% of the Secured Obligations. Thus, Remaining Defendants' arguments relating to set-offs is unavailing.


### B. Limitation on Dubin's Liability

Remaining Defendants also argue that Dubin is only liable for 80% of the outstanding amounts due under the Loan Agreement. PNC argues, and the undisputed record is clear, that Dubin is actually liable for "80% of the Secured Obligations." (SF Par. 14). As detailed above, based on the undisputed record, the total current amount of Secured Obligations is $8,572,568.31. Therefore, summary

judgment is granted in favor of PNC and against Dubin, and judgment is entered against Dubin in the amount of $6,858,054.65, which represents 80% of $8,572,568.31.

## CONCLUSION

Based on the foregoing analysis, PNC's motion for summary judgment is granted. Judgment is entered against LLC in the amount of $8,572,568.31, and judgment is entered against Dubin in the amount of $6,858,054.65.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   September 10, 2012